# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **2:23-CR-20544-TGB-DRG** |
| Plaintiff/Respondent, | HON. TERRENCE G. BERG |
| vs. | |
| **TYJUAN GRAY,** | **ORDER DENYING DEFENDANT'S MOTIONS TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 (ECF NOS. 20, 37),** |
| Defendant/Petitioner. | |
| | **AND DENYING DEFENDANT'S MOTION TO COMPEL (ECF NO. 53)** |

Defendant/Petitioner Tyjuan Gray pled guilty to assaulting a federal employee and inflicting bodily injury in violation of 18 U.S.C. § 111(a)(1) and (b). This Court sentenced Gray to 120 months, which the Sixth Circuit upheld on appeal, along with Gray's 41-month consecutive sentence in another case stemming from being a felon in possession of a firearm. *United States v. Gray*, Nos. 24-1507/1553/1577, 2025 WL 2375137 (6th Cir. Aug. 15, 2025), *cert. denied*, *Gray v. United States*, No. 25-6165, 2026 WL 79700 (S. Ct. Jan. 12, 2026). Gray filed a motion to vacate his sentence under 28 U.S.C. § 2255 while his appeal was pending, and another § 2255 motion after his appeal was decided. ECF Nos. 20,

37. These motions are fully briefed. Gray also recently filed a motion to compel certain documents. ECF No. 53.

For the reasons that follow, Gray's motions will be **DENIED**.

## I.   BACKGROUND

### A. Gray Assaults a Nurse Practitioner at Milan

In July 2023, Gray was in custody at the Federal Detention Center in Milan, Michigan, on a charge of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On or about July 12, 2023, a nurse practitioner ("NP") was seeing patient-inmates during sick call. Presentence Investigation Report ("PSR") ¶ 9, ECF No. 11 (Sealed). After seeing four other patients, the NP met with Gray in a closed-door appointment to discuss his medications. *Id.* While seated and without warning, Gray lunged at the NP and grabbed her throat, forcing her wheeled chair to slam back into a wall and causing her head to strike the wall and her neck to extend across the back of the chair. *Id.* ¶ 10. Gray held the NP's left wrist so that she could not activate her radio or access her pepper spray. *Id.* The two ended up on the floor at some point and the NP used her right fist to strike Gray, but he kneed her in the stomach and continued to choke her while still holding her left wrist. *Id.* At some point Gray let go of the NP's left wrist and reached for her pants, but continued to choke her so hard that she urinated on herself. *Id.* ¶¶ 10–11.

2

Other inmates eventually heard screaming and saw what was happening through the door window and intervened, with one inmate pulling Gray off the NP and carrying him out of the room. *Id.* ¶ 11. During the attack, the NP had managed to activate her body alarm. *Id.* 10. The NP came out of the exam room, in shock, and used her pepper spray as Gray, who had been standing in the hallway, walked back toward her calling her a b*tch and stating that she had bloodied his face. *Id.*¶ 12. At that time, Bureau of Prisons ("BOP") corrections staff responded to the scene and neutralized the situation. *Id.*

The NP was brought to the hospital where she was evaluated and released. *Id.* ¶ 13. She saw her primary care doctor the next day for a headache, swelling in her neck, and pain in shoulder. *Id.* Over the following months, the NP had numerous medical appointments and received imaging studies of her shoulder. *Id.* In September 2023, she was diagnosed with a "traumatic incomplete tear of [her] right rotator cuff" and "rotator cuff impingement syndrome" as a result of Gray's attack on her, and she was ultimately treated with an ultrasound-guided injection of Kenalog to her affected shoulder. *Id.*

### B. Gray is Indicted for Assaulting the NP and Rejects a Rule 11 Plea Offer

On September 21, 2023, a federal grand jury returned a one-count indictment charging Gray with assaulting, resisting, or impeding an

employee and inflicting bodily injury in violation of 18 U.S.C. § 111(a)(1) and (b) for his July 12, 2023 attack on the NP. Indictment, ECF No. 1.

At a January 4, 2024 pretrial conference, the Government placed on the record the terms of a Rule 11 plea agreement that was offered to Gray. ECF No. 22, PageID.150–51. The Government stated that the agreement contained certain guideline recommendations, including a total of 3 levels of reduction for acceptance of responsibility, factual stipulations, and capped the Government's sentencing recommendation at the top of Gray's guideline range as determined by the Court. *Id.* The Government also included an appeal waiver and collateral review waiver. *Id.* At that time, the Government also placed its draft guideline calculations on the record, which the Government anticipated would be 92–115 months. *Id.*

Gray's defense counsel confirmed receipt of the Rule 11 agreement and that he had reviewed its contents with Gray. *Id.* PageID.151–52. Defense counsel stated on the record that he had advised Gray not to accept the Rule 11 agreement, and listed his reasons for that advice, such as a disagreement with the guideline recommendations and the factual stipulations. *Id.* Defense counsel then stated that Gray did "intend to plead guilty to the charge as he believes he is guilty of the charge." *Id.* PageID.152.

The Court then turned to Gray and asked him if he had a chance to go over the plea agreement with his lawyer, to which Gray replied "Yes,

sir." *Id.* The Court asked Gray "[d]o you agree with what your lawyer has said with respect to the fact that you do not want to take this plea agreement?" and Gray replied, "Yes, sir" and then confirmed that he did intend to enter a guilty plea at a later date. *Id.* Defense counsel confirmed that he had received all of the discovery needed in this case and that he had reviewed and discussed the case and the discovery with Gray. *Id.* PageID.153–54. Toward the end of the hearing, the Court asked Gray if he is "satisfied with the advice and the counsel that [he's] received in this case" from defense counsel, and Gray responded "Yes, sir." *Id.* PageID.154.

### C. Gray Enters a Guilty Plea

The next month, on February 5, 2025, Gray entered his guilty plea without a Rule 11 plea agreement. The Court first confirmed with counsel for both the Government and the defense and with Gray that Gray was proceeding without a written Rule 11 agreement. ECF No. 24, PageID.164. The Court then proceeded with a thorough plea colloquy, addressing the charge to which Gray was pleading guilty, the elements of that charge, the maximum penalties for that charge, Gray's competency, the rights he was giving up, and the voluntariness of his plea. *Id.* PageID.165–72. The Court also questioned Gray about his working relationship with his defense counsel:

> THE COURT: I want to ask you some questions about your working with Mr. Longstreet. Are you satisfied with the work

the advice and the counsel that he has provided to you in this case?

THE DEFENDANT: Yes, sir.

THE COURT: And, Mr. Longstreet, on your part, have all formal plea offers that were made by the Government to you conveyed by you to Mr. Gray?

MR. LONGSTREET: Yes.

*Id.* PageID.172.

The Court next questioned whether the sentence in this case would run consecutively to Gray's sentence to be imposed in his felon-in-possession case in front of the Honorable Jonathan J.C. Grey. *Id.* PageID.173–74. The Government responded that the Court had the discretion to run the sentence concurrently or consecutively to Gray's sentence on the firearms possession case. *Id.*

The Court proceeded to advise Gray that the sentencing guidelines "are not mandatory, they're what they call advisory. So that means that the Court must consider them, but the Court is not required to sentence you within the guideline range. The Court could sentence you within the range or below the range or above the range. It's really up to the Court." *Id.* PageID.175. The Court stated that it would calculate the guideline range after receiving the presentence report that would include the probation officer's calculation of the guidelines. *Id.* Gray confirmed that he understood this *Id.* The Court continued the plea colloquy, explaining the additional factors and circumstances it would consider at sentencing

6

in addition to the sentencing guidelines. *Id.* PageID.175–76. The Court explained Gray's constitutional rights, and Gray confirmed his understanding of those rights he was giving up by pleading guilty. *Id.* PageID.176–78. After Gray's attorney conducted a voir dire of Gray as to the factual basis of the charge against him, the Court accepted Gray's guilty plea. *Id.* PageID.180–87.

### D. Gray is Sentenced

On May 29, 2024, Gray appeared before the Court for sentencing. The Court heard oral arguments by counsel for the defense and the Government, and also heard the victim impact statement by the NP. *See* ECF No. 25.

Defense counsel first objected to paragraph 22 of the Presentence Report ("PSR"), contending that that PSR's addition of a score of 4 points for a serious injury was erroneous because the medical records showed that the victim NP had a preexisting shoulder injury and that the July 12, 2025 assault therefore was not the direct and proximate cause of the victim's shoulder injury. *Id.* PageID.196–99, 202. The Government responded that the remainder of the medical records show that the NP had achieved complete relief for her prior chronic shoulder injury after a distal clavicle resection a year prior, and that the present injury—an incomplete tear of the rotator cuff—was caused by the assault. The Government asserted that an assessment of 4 points therefore was proper for an injury between a "bodily injury" and a "serious bodily

injury," per the sentencing guidelines. *Id.* PageID.201–02. The Court overruled defense counsel's objection, finding that the information in the PSR and in the medical records submitted by the Government show by a preponderance of the evidence that while the NP did have a prior history of shoulder pain, she got relief for that injury and was completely healed when she was assaulted by Gray, after which her pain was worse and she subsequently had to have medical treatment for the injury, including an injection into her shoulder. The Court thus concluded that a 4 point assessment for an injury between the definitions of "bodily injury" and "serious bodily injury" is appropriate. *Id.* PageID.202–04.

The defense counsel also objected to the statement in the PSR that the victim was strangled and/or choked, contending that she was instead "collared," as Gray asserts. Defense counsel suggested that the photos of the victim do not show the degree of injury consistent with strangulation—i.e., more significant redness, fingerprints, or scratching. *Id.* PageID.204–05. The Court overruled that objection, finding that an interview of the victim a few days after the assault is consistent with the facts in the PSR, and that the photos of the victim do show evidence of injury to her neck. *Id.* PageID.206–07. Gray's counsel also had two other objections regarding points assessed in the PSR for prior convictions, which were considered and overruled. *Id.* PageID.208–10.

The Court then heard from defense counsel, Gray, and the Government. *Id.* PageID.214–21. The Court further heard testimony

8

from the victim NP regarding the assault and the impact it has had, and continues to have, on her life. *Id.* PageID.221–23.

The Court next considered the sentencing guidelines, which it calculated to be 92–115 months based on an adjusted offense level of 24 and a criminal history category of 5, the § 3553(a) factors, and the victim's testimony, and sentenced Gray to an above-guidelines sentence of 120 months in prison, followed by a two-year term of supervised release. *Id.* PageID.229–30; Judgment, ECF No. 15.

About one week later, on June 6, 2024, the Honorable Jonathan J.C. Grey sentenced Gray to 41 months in prison on the felon-in-possession charge, to be served consecutively to the sentence in this case. *United States v. Gray*, No. 20-20400, ECF No. 89, PageID.493. (E.D. Mich. June 6, 2024).

### E. Gray's Post-Judgment Appeals and Motions

On June 7, 2024, Gray appealed his Judgment and sentence in this case, challenging the procedural and substantive reasonableness of his sentence. *United States v. Gray*, Case No. 24-1507 (6th Cir.). He also appealed the judgment and sentence in his gun case *United States v. Gray*, Case Nos. 24-1553 and 24-1577 (6th Cir.). On August 15, 2025, the Sixth Circuit found that the 120-month sentence imposed in this case was procedurally reasonable, and that this Court properly and reasonably applied a four-point enhancement for bodily injury under the sentencing guidelines, thoroughly considered the § 3553(a) factors, and did not err

9

in departing above the sentencing guidelines. *See United States v. Gray*, Nos. 24-1507/1553/1577, 2025 WL 2375137, at \*2–5 (6th Cir. Aug. 15, 2025), *cert. denied*, *Gray v. United States*, No. 25-6165, 2026 WL 79700 (S. Ct. Jan. 12, 2026). The Sixth Circuit further found the sentence substantively reasonable and that the Court "did not abuse its discretion by departing upward by five months and sentencing Gray to 120 months' incarceration in his assault case." *Id.* at \*6.

On August 24, 2024, while his appeal was pending, Gray filed a motion to vacate sentence under 28 U.S.C. § 2255 in this case. ECF No. 20. The Government responded on October 30, 2024, that the motion was premature because Gray's direct appeal was then pending, and "[t]he Sixth Circuit has adopted 'the rule espoused by multiple Circuits that in the absence of extraordinary circumstances, a district court is precluded from considering a § 2255 application for relief during the pendency of the applicant's direct appeal.'" ECF No. 27, PageID.239–40 (quoting *Capaldi v. Pontesso*, 135 F.3d 1122, 1124 (6th Cir. 1998)).

On November 25, 2025, after the Sixth Circuit's opinion was issued, Gray filed a second Motion to Vacate Sentence under 28 U.S.C. § 2255. ECF No. 37. Gray again asserts essentially the same grounds for relief as he did in his first motion: (1) his sentence with an upward departure was unlawful and violated his 14th Amendment due process rights; (2) the prosecutor engaged in prosecutorial misconduct by bringing a charge based on false statements of a victim related to her injury; (3) his

conviction should be set aside because he has a pending civil suit against the facility where he was detained and because he "was subject to cruel and unusual punishment" where he has been housed; and (4) his trial counsel rendered ineffective assistance of counsel. *Id.*

The Government filed a response in opposition to Gray's two § 2255 motions, arguing that Gray's counsel was not constitutionally ineffective for advising Gray to turn down a Rule 11 plea agreement and plead guilty, and that Gray cannot show that he would have proceeded to trial had he been properly advised. ECF No. 47. The Government contends that Gray's remaining § 2255 grounds are procedurally barred, without merit, or not cognizable in a motion under 28 U.S.C. § 2255. *Id.*

Finally, on April 13, 2026, Gray filed a motion to compel discovery, seeking to compel the Government to provide "copies of discovery, grand jury transcripts, grand jury instructions, medical records of [the victim NP] and hospital records and copy of warrant." ECF No. 53.

## II.   LEGAL STANDARD

A prisoner serving a sentence imposed by a federal court may challenge that sentence under 28 U.S.C. § 2255 "upon the ground that [it] was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

11

As relief, the prisoner may move the court which imposed the sentence to correct, vacate, or set it aside. *Id.*

The law is clear that "§ 2255 claims that do not assert a constitutional or jurisdictional error are generally cognizable only if they involve a fundamental defect which inherently results in a complete miscarriage of justice." *Snider v. United States*, 908 F.3d 183, 189 (6th Cir. 2018) (citation modified) (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)). This standard is met only in exceptional circumstances; not every alleged error of law can be raised on a § 2255 motion. *Hill v. United States*, 368 U.S. 424, 428 (1962); *Davis*, 417 U.S. at 346. Generally, a motion brought under § 2255 must allege "one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

A petitioner seeking to set aside his sentence pursuant to Section 2255 has the burden of "sustaining [his] contentions by a preponderance of the evidence." *Pough v. United States,* 442 F.3d 959, 964 (6th Cir. 2006). Indeed, to "obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). "Once the defendant's chance to appeal has been waived or exhausted," the courts "are entitled to

presume that [the defendant] stands fairly and finally convicted." *Id*. at 164.

## III. DISCUSSION

### A. Ineffective Assistance of Counsel

Gray argues that his trial counsel was ineffective for, among other things, advising him to plead guilty without a Rule 11 plea agreement, failing to advise him that he would be assessed criminal history points in his other federal case for pleading guilty, failing to provide him with a copy of discovery, and failing to retain an expert or move to suppress alleged false testimony. ECF No. 20, PageID.136–38; ECF No. 37, PageID.298–306.

The Government asserts that this is Gray's only § 2255 claim that is not procedurally barred. Indeed, the procedural-default rule, which provides that "claims not raised on direct appeal may not be raised on collateral review," *Massaro v. United States*, 538 U.S. 500, 504 (2003), does not apply to ineffective-assistance-of-counsel claims, which may be first raised in a § 2255 motion. *Id*.; *Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013) ("Claims of ineffective assistance of counsel are properly raised in a section 2255 motion."). The Government argues that Gray's ineffective assistance claim nevertheless fails on the merits.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. In order for an attorney's assistance

to be constitutionally adequate, it need not be free from error. *McMann v. Richardson*, 397 U.S. 759, 771–74 (1970). Rather, an attorney's assistance is considered ineffective when his performance falls below that of a "reasonably competent attorney." *Id.* at 770–71.

To prevail on an ineffective-assistance claim, a petitioner must establish (1) that counsel performed deficiently; and (2) that the deficient performance prejudiced the petitioner's defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is "deficient" when he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To establish prejudice, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before judge or jury." *Id.* at 695.

The *Strickland* framework applies to claims of ineffective assistance of counsel arising from a guilty-plea-based conviction, as in this case. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The first component of the test remains the same—the petitioner must establish that his counsel performed deficiently during the plea process. *Id.* However, the prejudice

14

requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Id.* at 59. In other words, the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.; see also Smith v. United States*, 348 F.3d 545, 551–52 (6th Cir. 2003).

Defendants alleging the ineffective assistance of counsel bear "a heavy burden of proof." *Whiting v. Burt,* 395 F.3d 602, 617 (6th Cir.2005). Judicial scrutiny of counsel's performance is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. In addition, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

### 1. Counsel's performance was not constitutionally deficient

Gray asserts his trial counsel was constitutionally ineffective, having incorrectly advised him to plead guilty, and without a Rule 11 plea agreement, and failing to give him a copy of all discovery. He asserts he would not have taken a plea if he knew he would not get the low end

15

of the sentencing guidelines and if he knew his sentences in this case and the gun case would not be served concurrently.

Turning to the first prong of the *Strickland* test, "[d]efendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). "A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available." *Smith*, 348 F.3d at 553. "A defendant challenging his attorney's conduct during plea bargaining, moreover, 'must show that counsel did not attempt to learn the facts of the case and failed to make a good-faith estimate of a likely sentence. He must also show that his lawyer's deficiency was a decisive factor in his decision to plead guilty.'" *Pough*, 442 F.3d at 966 (citing *United States v. Cieslowski,* 410 F.3d 353, 358–59 (7th Cir. 2005)).

Gray fails to establish that his counsel was constitutionally ineffective. At the January 4, 2024 pretrial conference, the Government placed on the record the terms of a proffered Rule 11 plea agreement made to Gray. ECF No. 22, PageID.150–51. Defense counsel confirmed receipt of the Rule 11 agreement, that he had reviewed its contents with Gray, and that he had advised Gray to reject the agreement, listing his reasons for the advice. *Id.* PageID.151–52. Defense counsel further

confirmed that he had received all of the discovery needed in this case and that he had reviewed and discussed the case and the discovery with Gray. *Id.* PageID.153–54. Gray declared under oath that he understood the terms of the Rule 11 plea agreement that was offered to him, that he was satisfied with his counsel's performance and advice, and that it was his decision to reject the agreement and plead guilty without a Rule 11 agreement. *Id.* PageID.152, 154. The following month, on February 5, 2025, Gray entered his guilty plea, without a Rule 11 agreement. In that proceeding, the Court proceeded with a thorough plea colloquy, addressing the charge to which Gray was pleading guilty, the elements of that charge, the maximum penalties for that charge, Gray's competency, the rights he was giving up, and the voluntariness of his plea. ECF No. 24, PageID.165–72. Gray again confirmed that he was satisfied with his attorney's performance and advice. *Id.* PageID.172.

Gray's "responses in open court, including in [his] plea colloquy, must prevail over assertions in [his] § 2255 motion." *Roman v. United States*, No. 21-5442, 2021 WL 8055773, at *3 (6th Cir. Nov. 29, 2021). If the Court were to rely on Gray's subjective impressions, or his now asserted contrary representations, "we would be rendering the plea colloquy meaningless[.]" *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (stating that "the very serious nature of claims such as these mandates that a defendant must be bound to the answers he provides during a plea colloquy"). "[W]here the court has scrupulously followed the

required procedure, the defendant is bound by his statements in response to that court's inquiry" and "a claim of ineffective assistance of counsel predicated on allegedly misleading information given by counsel about the terms of a plea agreement can *never constitute* an 'extraordinary circumstance' under *Baker* when the court conducts a proper, clear, and thorough plea colloquy." *Id.* (quoting *Baker v. United States,* 781 F.2d 85, 90 (6th Cir. 1986)).

Similarly, Gray's claim that his attorney promised him a sentence at the low end of the guidelines is contradicted by his statements in Court that there were no promises or benefits guaranteed him for pleading guilty. *See* ECF No. 24, PageID.172. The Court further advised Gray that the sentencing guidelines were not mandatory, and that the Court could sentence him above the guidelines, with its determination made after reviewing the presentence report that would be prepared for Gray. *Id.* PageID.175. Gray confirmed that he understood. *Id.* Gray is bound by the statements made in response to the Court's inquiries. *See Ramos*, 170 F.3d at 566. Moreover, even if Gray's attorney had made the representation about the lower guidelines "a lawyer's mistaken prediction about the likelihood of a particular outcome is insufficient to demonstrate ineffective assistance of counsel." *Bari v. Williams*, No. 1:09CV2880, 2011 WL 3648124, at *9 (N.D. Ohio Apr. 11, 2011) (citation omitted), *report and recommendation adopted by* 2011 WL 3648113 (N.D. Ohio Aug. 18, 2011).

To the extent Gray complains that he was assessed additional criminal history points in his other pending federal gun case based on his guilty plea in this case, he was informed during his guilty plea in this case that his plea would have additional consequences, and he still affirmed that he wanted to plead guilty "of [his] own free will because [he is] guilty." ECF No. 24, PageID.171–72. And the Government points out that, in any event, the additional points he received in his gun case for the guilty plea in this case did not change Gray's criminal history category of VI in that case because he was already at that level without the additional points. ECF No. 47, PageID.355.

Finally, Gray's complaints that although his attorney went over discovery with him, he was unable to keep a copy of discovery, and that his attorney did not move to suppress alleged "false testimony" by a witness or hire a medical expert, do not state a claim for ineffective assistance of counsel. "Once a criminal defendant has pleaded guilty or no-contest in open court, he may not raise independent claims relating to the deprivation of constitutional rights that occurred prior to his plea's entry." *Maldonado v. Campbell*, No. 20-1345, 2020 WL 6194595, at *2 (6th Cir. Aug. 17, 2020) (finding petitioner waived an ineffective assistance of counsel claim based on a failure to file a motion to suppress and failure to request a lineup after he pleaded no-contest) (citations omitted); *Humphrey v. United States*, No. 1:23-cv-1150, 2024 WL 4986214, at *7 (W.D. Mich. Dec. 5, 2024) (finding defendant who entered

19

guilty plea waived ineffective assistance of counsel claim based on failure to file motion to suppress). "[A]fter the entry of an unconditional guilty plea, the defendant may challenge only the court's jurisdiction and the voluntary and intelligent character of the plea itself." *Werth v. Bell*, 692 F.3d 486, 495 (6th Cir. 2012).

Moreover, "[a]s a general matter, there is no constitutional duty for an attorney to share discovery documents with the defendant." *United States v. Stewart*, No. CRIM.A. 08-124-ART, 2011 WL 382206, at *4 (E.D. Ky. Jan. 4, 2011) ("Other courts addressing this issue have similarly found that an attorney's failure to share discovery materials with his client does not amount to ineffective assistance of counsel.") (collecting cases), *report and recommendation adopted,* 2011 WL 381951 (E.D. Ky. Feb. 2, 2011). In any event, Gray's counsel confirmed at the pretrial conference that he received the discovery and everything needed in connection with the case, and that he "discussed the case and the discovery with [his] client," and Gray confirmed that he is satisfied with the advice and counsel that he has received in this case. ECF No. 22, PageID.153–54. In addition, as discussed above, the discovery, including the victim's medical records and her impact statement, were addressed at the sentencing hearing, and the victim herself testified. Gray therefore has failed to assert any actions by his counsel that were constitutionally ineffective, and he fails to state a claim for ineffective assistance of counsel.

### 2. Gray fails to establish prejudice

In addition, Gray has failed to show that his counsel's performance prejudiced him. Under the second prong of the *Strickland* analysis, the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *Smith*, 348 F.3d at 551–52. The test for prejudice "is objective, not subjective; and thus, 'to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)). Moreover, the Supreme Court has cautioned that "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded," but "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 582 U.S. 357, 368–69 (2017) (noting the strong societal interest in finality has "special force with respect to convictions based on guilty pleas.") (quoting *United States v. Timmreck,* 441 U.S. 780, 784 (1979)).

Gray has not made a showing of prejudice in this case. In contrast to his assertion now that he "never would of accepted [the] plea if [he] knew [he] would not get [the] low end of [the sentencing] guidelines," ECF No. 20, PageID.137, he acknowledged at his plea hearing that his sentence would be up to the Court. The Court informed Gray that "the

Court is not required to sentence you within the guideline range. The Court could sentence you within the range or below the range or above the range. It's really up to the Court." ECF No. 24, PageID.175. The Court further informed Gray that it would calculate the guideline range after receiving the presentence report that would include the probation officer's calculation of the guidelines. *Id.* Gray confirmed that he understood this. *Id.* Gray's "[s]olemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Gray has not identified any contemporaneous evidence— either something that he *was* told, or something that he was *not* told— that would suggest he would have rejected the plea deal. His unsupported post hoc assertion that he would not have entered the plea if he knew the sentence he ultimately received is insufficient. This position lacks support because, at both plea hearings, Gray was advised that the ultimate sentence could exceed the guideline range. He was never guaranteed a guideline sentence, but he still knowingly entered a guilty plea rather than to have a jury trial.

Moreover, the Government's case against Gray was strong, which he presumably realized after his review of the discovery materials with his attorney. He does not point to any evidence or argument he would have raised in the face of the overwhelming evidence against him—the direct testimony of the victim and the people who came to her aid. The

22

decision to plead guilty in the face of that evidence hardly could be considered irrational.

Accordingly, Gray's ineffective assistance of claim fails.

## B. Prosecutorial Misconduct

Gray alleges that the prosecution committed perjury at sentencing and prosecutorial misconduct by bringing a charge based on alleged false statements of a "noncredible" victim related to her injury. ECF No. 22, PageID.135; ECF No. 37, PageID.295–96. However, a motion under § 2255 must consist of something more than legal conclusions unsupported by factual allegations. *Short v. United States,* 504 F.2d 63 (6th Cir.1974). Gray bases these claims on only his unsupported, self-serving accusations that the victim was lying about her injuries. He fails to offer any factual support for these claims, in violation of Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Court, and they therefore will be dismissed. *See Parks v. United States*, Nos. 1:12-cv-208, 1:08-cr-58, 2013 WL 427256, at *5 (E.D. Tenn. Feb. 4, 2013); *see also Livesay v. United States*, Nos. 2:14-CR-131, 2:16-CV-172, 2019 WL 2110509, at *4 (E.D. Tenn. May 14, 2019) ("Bald assertions do not suffice to carry the burden; factual support must be given."). Moreover, the record reflects that counsel for the defense, the Government, and the Court thoroughly discussed and addressed the victim's alleged preexisting injury, her medical records, and her alleged

injuries as a result of the July 12, 2025 assault, as set forth in those medical records. ECF No. 25, PageID.196–204.

In addition, the Court agrees that Gray's prosecutorial misconduct claims are procedurally defaulted to the extent he either failed to raise them on direct appeal or because he did and the Sixth Circuit has already decided this issue. Generally, a defendant must raise his claims on direct appeal, "[o]therwise, the claim is procedurally defaulted" for purposes of § 2255 review. *Sullivan v. United States*, 587 F. App'x 935, 942 (6th Cir. 2014) (quoting *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001)); *see also Wallace v. United States*, 43 F.4th 595, 602 (6th Cir. 2022) (explaining that "[u]nder the Supreme Court's procedural-default rule," a defendant's failure to raise a claim "during the 'main event' (his criminal litigation) means that he presumptively cannot raise it in an after-the-fact § 2255 motion"). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in [a § 2255 motion] only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Sullivan*, 587 F. App'x at 942 (6th Cir. 2001) (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)). A petitioner must show cause for each procedural default. *Frady*, 456 U.S. at 166. The cause-and-prejudice standard is stricter than the plain error standard under Fed. R. Crim. P. 52 and *United States v. Olano*, 507 U.S. 725 (1993), which governs defaulted claims on direct appeal. *See Frady*, 456 U.S. at 164–66.

As to showing actual prejudice, simply establishing a "possibility of prejudice is not sufficient; the petitioner must show that errors in the proceedings of which he complains worked to his actual and substantial disadvantage," resulting in "error of constitutional dimensions." *Id.* at 167. The result must be a fundamental miscarriage of justice. *Id.* at 172. The burden is on the movant to show he suffered the degree of actual prejudice "necessary to overcome society's justified interests in the finality of criminal judgments." *Id.* at 175. "The defendant 'must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Napier v. United States*, 159 F.3d 956, 962 (6th Cir. 1998) (quoting *Frady*, 456 U.S. at 170 (emphasis in original)).

Gray asserts in his § 2255 motion that his claim that the Government engaged in misconduct by providing "false testimony" about the victim's injuries was brought up on appeal by his attorney. ECF No. 37, PageID.295–96. Gray generally may not "relitigate" that same issue in a § 2255 motion. *See Soca-Fernandez v. United States*, No. 22-01882, 2023 WL 6475436, at *2 (6th Cir. Apr. 27, 2023) ("Section 2255 motions 'may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law.'") (quoting *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999)). The Sixth Circuit in this case

25

addressed the issue of the victim's injuries, *Gray*, 2025 WL 2375137, at *2, and further noted that "Gray's appellate brief references a causation-based argument he made at sentencing—that the victim's shoulder injury 'was a preexisting tennis injury.' He does not press that argument on appeal, though, so we do not address it." *Id.* n.2.

To the extent Gray did not raise his prosecutorial misconduct claims on appeal, his arguments still are procedurally defaulted, because he has failed to establish cause, prejudice, or actual innocence. Gray could have argued prosecutorial misconduct at his sentencing, but did not. Nor does he show that his guilty plea colloquy contained a constitutional error. Gray cannot use this § 2255 petition as a second opportunity to review issues that could have been raised on direct appeal. Gray has not argued cause or shown actual prejudice resulting from the alleged prosecutorial misconduct, and has not shown that he was actually innocent of the crime in the indictment. As a result, his prosecutorial misconduct claims are procedurally defaulted.

And even if the Court were to consider the merits of Gray's prosecutorial misconduct claims, they would fail. To prove that a prosecutor's failure to correct false testimony violated due process rights, a defendant must demonstrate that "(1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false." *Coe v. Bell,* 161 F.3d 320, 343 (6th Cir.1998) (quoting *United States v. Lochmondy,* 890 F.2d 817, 822 (6th Cir.1989)). "The burden is on the

defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by Government witnesses do not establish knowing use of false testimony." *Id.* Gray simply has not presented any evidence that the victim's description of her injury was actually perjured. The Court heard the victim's testimony, the attorneys' arguments, and reviewed medical records. There is no evidence that the Government engaged in misconduct, and Gray's prosecutorial misconduct claim is dismissed.

### C. Unlawful Sentencing

Gray next claims that his sentencing was unlawful because (1) "the prosecutor committed perjury on [the] record, by lying about the facts of the case," (2) the Court "took everything personal pertaining to the victim" and gave Gray an upward departure on his sentence, and (3) his Fourteenth Amendment due process rights were violated because there was no agreement on a factual basis, he was charged and convicted based on "inadmissible evidence" regarding the victim, he did not receive his discovery, and he was forced to accept a guilty plea without a Rule 11 plea agreement. ECF No. 20, PageID.134; ECF No. 37, PageID.294, 300–01.

As stated above, a § 2255 proceeding is not a substitute for a direct appeal, "[a]nd except for claims of ineffective assistance of counsel, 'claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice … or actual innocence.'"

27

*Soca-Fernandez*, 2023 WL 6475436, at *2. In this case, the Sixth Circuit addressed Gray's claims that his sentence was unlawful because (1) the Court applied a four-point enhancement for bodily injury under U.S.S.G. § 2A3.3(b)(3)(A), (2) the Court did not properly consider Gray's mental health and competency to proceed, and the need to avoid unwarranted sentencing disparities, (3) the Court applied an upward departure for his sentence, and (4) that his plea was not knowing and voluntary. *Gray*, 2025 WL 2375137, at *2–6. Gray cannot use his § 2255 motion to relitigate these issues, and these claims are barred. And any remaining claims he could have raised to the Sixth Circuit on appeal but did not are procedurally defaulted. *Sullivan*, 587 F. App'x at 942. He has failed to show cause or prejudice for not raising these claims on direct appeal, or that he is actually innocent. Accordingly, these claims will be dismissed.

### D. Eighth Amendment and Fourteenth Amendment Claims

Finally, Gray argues that he was subjected to cruel and unusual punishment "by Milan FDC" and the victim because he has a pending civil lawsuit against them "for refusing me my medication" for his mental condition and because of other conditions of his confinement, including denial of access to showers, harassment by other inmates, and being placed in solitary confinement. ECF No. 20, PageID.138; ECF No. 37, PageID.297. He asserts that he did not raise these issues on appeal.

Gray's complaints in that civil lawsuit and here regarding the conditions of his confinement at various institutions have nothing to do

28

with the constitutionality of the judgment or sentence against Gray in the underlying criminal assault case in this Court. Rather, they concern the conditions of Gray's confinement. Accordingly, these claims involving "the conditions of ... confinement rather than the validity of [a] conviction or sentence" are "not cognizable under § 2255." *See Johnson v. United States*, 76 F.3d 379 (Table), No. 95-5788, 1996 WL 47106,at *2 (6th Cir. Feb. 5, 1996) (citing *United States v. Jalili*, 925 F.2d 889, 893–94 (6th Cir. 1991)); *United States v. Givhan*, No. 24-20170, 2025 WL 2965773, at *2 (E.D. Mich. Oct. 20, 2025) (Michelson, J.) (collecting cases holding that a § 2255 motion is not the proper vehicle to challenge conditions of confinement). Instead, Gray would need to bring a separate civil lawsuit, which he did, as stated in his petition. That civil lawsuit, which alleged Eighth and Fourteenth Amendment claims and a defamation claim against Milan FDC and the victim in this case, was summarily dismissed without prejudice on August 8, 2024, with the Sixth Circuit dismissing Gray's notice of appeal in June 2025. *Gray v. Milan F.D.C.*, No. 24-cv-11531, ECF Nos. 5, 6, 11, 12 (E.D. Mich.). Accordingly, these claims will be dismissed, and Gray's § 2255 motions will be denied.

### E. Motion to Compel (ECF No. 53)

On April 13, 2026, Gray filed a document titled "Motion to Compel Discovery," seeking to compel the Government to produce "copy of discovery, grand jury transcripts, grand jury instructions, medical records of the victim [NP] and hospital records, copy of warrant, witness

testimony, victim testimony, FBI investigation notes, Prosecutor 'Tara Hindelang' 'notes with investigation and correspondence with victim and witnesses.'" ECF No. 53. Gray asserts that he submitted a written request for these documents but they have not been received. *Id.* Gray's motion to compel will be denied.

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Instead, discovery in § 2255 habeas proceedings is governed by Rule 6 of the Rules Governing Section 2255 Proceedings, which permits discovery only with leave of court after a showing of good cause. *See Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (stating a district court may allow discovery in collateral proceedings if "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief."). District courts routinely deny requests for discovery in habeas proceedings—including requests to compel attorneys to surrender a case file—absent a showing that a petitioner has asserted facts that would entitle him to relief. *See, e.g., Crawley v. United States*, No. 1:09-cr-83, 2014 WL 617633, at *11 (S.D. Ohio Feb. 18, 2014) ("Petitioner is not entitled to require [his former counsel] to respond to his meritless claims of error."); *Brown v. Morgan*, 968 F. Supp. 2d 649, 659 (D. Del. 2013) (denying as moot defendant's motion to compel former

defense counsel to surrender his case file because defendant's habeas petition did not, on its face, warrant relief).

Rule 6(b) provides, in part, that "[a] party requesting discovery must provide reasons for the request." *See Cornwell v. Bradshaw*, 559 F.3d 398, 410 (6th Cir. 2009) ("For good cause shown, the district court has the discretion to permit discovery in a habeas proceeding"). Rule 6 is meant to be "consistent" with the Supreme Court's decision in *Harris v. Nelson*, 394 U.S. 286 (1969), which states that "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry.'" *Bracy*, 520 U.S. at 908–09 (quoting *Harris*, 394 U.S. at 300).

"Good cause" is not demonstrated by "bald assertions" or "conclusory allegations." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001); *see also Williams*, 380 F.3d at 974 (same). Rather, the requested discovery must be materially related to claims raised in the habeas petition and be likely to "resolve any factual disputes that could entitle [the petitioner] to relief." *Williams*, 380 F.3d at 975 (citation modified); *see Bracy*, 520 U.S. at 908–09 (allowing discovery relevant to "specific allegations" of fact in support of a claim of constitutional error); *Braden v. Bagley*, No. 2:04-CV-842, 2007 WL 1026454, at *2 (S.D. Ohio Mar. 30, 2007) ("Rule 6's 'good cause' standard requires petitioner to at least

31

attempt to identify what he expects to uncover through his discovery requests"); *Post v. Bradshaw*, 621 F.3d 406, 425 (6th Cir. 2010) (discovery provides petitioner "that extra evidence" he needs to prove or strengthen his case). Rule 6(a) does not permit a "fishing expedition masquerading as discovery." *Stanford*, 266 F.3d at 460.

Gray has not shown good cause for the discovery he seeks. He only asserts that he asked for the documents and they were not produced to him. He fails to establish that he needs these documents to allow him to develop facts entitling him to relief under any motion. As discussed *supra*, Gray's claims in his § 2255 motions lack merit and his broad discovery request constitutes a "fishing expedition" which is "not a proper purpose for the discovery process." *Gibson v. United States*, Nos. 3:17-CV-21-TAV, 3:15-CR-66-TAV-HBG-1, 2017 WL 2222927, at *2 (E.D. Tenn. May 19, 2017) (citing *Williams*, 380 F.3d at 974). Gray's motion to compel therefore will be **DENIED.**

### F. No Hearing and No Certificate of Appealability

Finally, the Court finds that a hearing on Gray's § 2255 motions is unnecessary because the record conclusively shows that Gray is not entitled to relief and there are no facts in dispute. *See Poulsen v. United States*, 717 F. App'x 509, 518 (6th Cir. 2017) (affirming district court's denial of evidentiary hearing on § 2255 motion because the "allegations are insufficient to convince us that, even on a fully developed factual record, [the petitioner] would be able to prove *Strickland's* deficient

performance prong"); *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) ("[N]o hearing is required if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'"); *United States v. Fabode*, No. 18-20351, 2025 WL 1691202, at *7 (E.D. Mich. June 16, 2025) (Edmunds, J.) (finding that "an evidentiary hearing would not be helpful in this case" because a "Defendant's allegations are mostly contradicted by the record or conclusory").

Further, Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing § 2255 Proceedings requires that a district court issue or deny a certificate of appealability when it enters a final order. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not be issued. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

The Supreme Court has provided that, to demonstrate entitlement to a certificate of appealability pursuant to § 2255, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that

the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDanial*, 529 U.S. 473, 484 (2000).

Here, the Court concludes that reasonable jurists would not find it debatable whether Gray's § 2255 Motion should have been resolved in a different manner, nor would jurists of reason debate whether his claims were adequate to deserve encouragement to proceed further. Therefore, the Court declines to issue a certificate of appealability.

## IV. CONCLUSION

For the reasons set forth above, Defendant/Petitioner's motions for relief under 28 U.S.C. § 2255, ECF Nos. 20, 37, are **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Compel, ECF No. 53, is **DENIED.**

Finally, **IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED.**

**IT IS SO ORDERED.**

Dated: June 8, 2026

/s/Terrence G. Berg
HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

34